**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
Sue J. Nam
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

**KALIEL PLLC**
Jeffrey D. Kaliel
*jkaliel@kalielpllc.com*
Sophia G. Gold
*sgold@kalielplllc.com*
1875 Connecticut Ave. NW 10th Floor
\Washington, D.C.  20009
Telephone: (202) 340-4783

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
## WHITE PLAINS DIVISION

| | |
|---|---|
| **NICHOLE ZACHMAN**, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br>   v.<br><br>**HUDSON VALLEY FEDERAL CREDIT UNION,**<br><br>              Defendant. | Case No.  20-cv-1579<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW the Plaintiff Nichole Zachman ("Plaintiff" or "Zachman"), by counsel, and for her Class Action Complaint against the Defendant, alleges as follows:

## INTRODUCTION

1.      This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, Hudson Bank, N.A. ("Hudson" or "Defendant"), arising from the unfair and unconscionable assessment and collection of "Overdraft Fees" ("OD Fees") or insufficient funds fees ("NSF Fees") on accounts that were not actually overdrawn.

2.      Besides being deceptive, unfair and unconscionable, these practices breach contract promises made in Hudson's adhesion contracts.

3.      In plain, clear, and simple language, the checking account contract documents discussing OD Fees promise that Hudson will only charge OD Fees or NSF Fees on transactions where there are insufficient funds to "cover" them.

4.      As happened to Plaintiff, however, Hudson improperly charges bank fees in just this circumstance.

5.      Plaintiff and other Hudson customers have been injured by Hudson's practices. On behalf of themselves and the putative class, Plaintiff seek damages, restitution and injunctive relief for Hudson's breach of contract, deceptive practices, violation of the Electronic Funds Transfer Act.

## JURISDICTION

6.      This Court also has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1334(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and based upon information and belief, at least one of the members

of the proposed classes is a citizen of a different state than Defendant.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

<strong><u>PARTIES</u></strong>

8.     Plaintiff Zachman is a natural person who is a citizen of New York and resides in Wappingers Falls, New York. Plaintiff has a personal checking account with Hudson, which is governed in relevant part by Hudson's "WHAT YOU NEED TO KNOW ABOUT OVERDRAFTS AND OVERDRAFT FEES" document.

9.     Defendant Hudson is a bank with approximately $10 billion in assets. Defendant is one of the largest credit unions in New York.

<strong><u>FACTUAL BACKGROUND AND GENERAL ALLEGATIONS</u></strong>

10.     Plaintiff has a checking account with Hudson.

11.     Hudson issues debit cards to its checking account customers, including Plaintiff, which allows its customers to have electronic access to their checking accounts for purchases, payments, withdrawals and other electronic debit transactions.

12.     Pursuant to its standard account agreement, Hudson charges fees (currently in the amount of $34) for transactions that purportedly result in an overdraft.

**I.     HUDSON CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT**

**A.  Overview of Claim**

13.     Plaintiff brings this cause of action challenging Hudson's practice of charging OD Fees on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative

3

Transactions," or "APPSN Transactions."

14.     Here's how it works.  At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, Hudson immediately reduces consumers' checking accounts for the amount of the purchase, sets aside funds in a checking account to cover that transaction, and as a result, the consumer's displayed "available balance" reflects that subtracted amount.  As a result, customers' accounts will always have sufficient available funds available to cover these transactions because Hudson has already sequestered these funds for payment.

15.     However, Hudson still assesses harsh $34 OD Fees on many of these transactions and mispresents its practices in its account documents.

16.     Despite putting aside sufficient available funds for debit card transactions at the time those transactions are authorized, Hudson later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance.  These types of transactions are APPSN Transactions.

17.     Hudson maintains a running account balance in real time, tracking funds consumers have for immediate use.  This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instance they are made.  When a customer makes a purchase with a debit card, Hudson sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance.  Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

18.     That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to

account for any earlier debit card transactions.  This means that many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

19.     Still, despite keeping those held funds off-limits for other transactions, Hudson improperly charges OD Fees on those APPSN Transactions, although the APPSN Transactions *always* have sufficient available funds to be covered.

20.     Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

> A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged.  Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above.  Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged.  Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions.   Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status.  But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures.  Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive.  Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

21.     There is no justification for these practices, other than to maximize Hudson's OD Fee revenue.  APPSN Transactions only exist because intervening checking account transactions supposedly reduce an account balance.  But Hudson is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does the latter to the tune of millions of dollars each year.  But Hudson was not content with these millions in OD Fees. Instead, it sought millions *more* in OD Fees on these APPSN Transactions.

22.     Besides being deceptive, unfair, and unconscionable, these practices breach contract promises made in Hudson's adhesion contracts—contracts which fundamentally misconstrue and mislead consumers about the true nature of Hudson's processes and practices. These practices also exploit contractual discretion to gouge consumers.

23.     In plain, clear, and simple language, the checking account contract documents covering OD Fees promise that Hudson will only charge OD Fees on transactions that have insufficient funds to cover that transaction.

24.     In short, Hudson is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

**B.  Mechanics of a Debit Card Transaction**

25.     A debit card transaction occurs in two parts.  First, authorization for the purchase amount is instantaneously obtained by the merchant from Hudson.  When a merchant physically or virtually "swipes" a customer's debit card, the card terminal connects, via an intermediary, to Hudson, which verifies that the customer's account is valid and that sufficient available funds exist to "cover" the transaction amount.

26.     At this step, if the transaction is approved, Hudson immediately decrements the funds in a consumer's account and sequesters funds in the amount of the transaction but does not

yet transfer the funds to the merchant.

27.     Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 25, 2009).

28.     Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account.

29.     Hudson (like all banks) decides whether to "pay" debit card transactions at authorization.  After that, Hudson is obligated to pay the transaction no matter what.  For debit card transactions, that moment of decision can only occur at the point of sale, at the instant the transaction is authorized or declined.  It is at that point—and only that point—when Hudson may choose to either pay the transaction or decline it. When the time comes to actually settle the transaction, it is too late—the bank has no discretion and must pay the charge. This "must pay" rule applies industry wide and requires that, once a financial institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand, regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046 (Nov. 17, 2009).

30.     There is no change—no impact whatsoever—to the available funds in an account when this step occurs.

7

C. **Hudson's Account Contract**

31.    Plaintiff's Hudson checking account is currently governed in relevant part by Hudson's "WHAT YOU NEED TO KNOW ABOUT OVERDRAFTS AND OVERDRAFT FEES" document ("Overdraft Form").  Ex. 1.

32.    The Overdraft Form provides that Hudson will not charge OD Fees on transactions that have sufficient funds to cover them at the time they are initiated:

> An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway.
>
> [...]
>
> WHAT ARE THE STANDARD OVERDRAFT PRACTICES THAT COME WITH MY ACCOUNT?
>
> We do authorize and pay overdrafts for the following types of transactions:
> - Checks and other transactions made using your checking account
> - Automatic bill payments
> - Automatic / recurring
>
> Unless you ask us to, we do not authorize and pay overdrafts for the following types of every day transactions:
>
> - ATM transactions
> - Visa Debit Card transactions
>
> We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transaction. If we do not authorize and pay an overdraft, your transaction will be declined.

33.    For debit card transactions, the bank decides whether to "authorize and pay" a debit card transaction at the moment of authorization.  Hudson represents to its customers that it is one step, just like consumers using debit cards believe.

34.    For APPSN Transactions, which are immediately deducted from a positive account balance and held aside for payment of that same transaction, there are *always* funds to "cover" those transactions—yet Hudson assesses OD Fees on them anyway.

8

35.     The above promises indicate that transactions are only overdraft transactions when they are authorized into a negative account balance.  Of course, that is not true for APPSN transactions.

36.     In fact, Hudson actually authorizes transactions on positive funds, sets those funds aside on hold, then fails to use those same funds to settle those same transactions.  Instead, it uses the secret posting process described below.

37.     Hudson charges OD Fees even when sufficient funds exist to cover transactions that are "authorized and paid" into a positive balance.  No express language in any document states that Hudson may impose OD Fees on any APPSN Transactions.

38.     The account documents misconstrue Hudson's true debit card processing and overdraft practices.

39.     First, and most fundamentally, Hudson charges OD Fees on debit card transactions for which there are sufficient funds available to use to cover the transactions.

40.     Hudson's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates a contractual promise not to do so.  This discrepancy between Hudson's actual practice and the contract causes consumers like Ms. Zachman to incur more OD Fees than they should.

41.     Next, sufficient funds for APPSN Transactions are actually debited and held from the account immediately, consistent with standard industry practice.

42.     Because these withdrawals take place at authorization, they cannot be re-debited later. But that is what Hudson does when its re-debits the account during a secret batching posting process.

43.     In reality, Hudson's actual practice is to assay the same debit card transaction twice

to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

44.     At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds.  As such, Hudson cannot then charge an OD fee on such transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

45.     Upon information and belief, something more is going on: at the moment a debit card transaction is getting ready to settle, Hudson does something new and unexpected by its customers, during the middle of the night, during its nightly batch posting process.  Specifically, Hudson releases the hold placed on funds for the transaction for a split-second, putting money back into the account, and then re-debits the same transaction a second time.

46.     This secret step allows it to charge OD Fees on transactions that never should have been subject to them—transactions that were authorized into sufficient funds, and for which Hudson specifically set aside money to pay them.

47.     This discrepancy between Hudson's actual practices and the contract causes accountholders to incur more OD Fees than they should.

48.     In sum, there is a huge gap between Hudson's practices as described in the account documents and Hudson's practices in reality.

### D.  Reasonable Consumers Understand Debit Card Transactions are Debited Immediately

49.     The assessment of OD Fees on APPSN Transactions is fundamentally inconsistent with immediate withdrawal of funds for debit card transactions.  That is because if funds are immediately debited, they cannot be depleted by intervening transactions (and it is that subsequent depletion that is the necessary condition of APPSN Transactions).  If funds are immediately

debited, they are necessarily applied to the debit card transactions for which they are debited.

50.     Hudson was and is aware that this is precisely how accountholders reasonably understand debit card transactions to work.

51.     Hudson knows that many consumers prefer debit cards for these very reasons. Consumer research indicates that consumers prefer debit cards as a budgeting device because they do not allow debt like credit cards do, and because the money comes directly out of a checking account.

52.     Consumer Action, a national nonprofit consumer education and advocacy organization, advises consumers determining whether they should use a debit card that "[t]here is no grace period on debit card purchases the way there is on credit card purchases; the money is immediately deducted from your checking account. Also, when you use a debit card you lose the one or two days of 'float' time that a check usually takes to clear." *See* http://www.consumeraction.org/helpdesk/articles/what_do_i_need_to_know_about_using_a_debit_card (last visited July 11, 2019).

53.     Further, Consumer Action informs consumers that "Debit cards offer the convenience of paying with plastic without the risk of overspending. When you use a debit card, you do not get a monthly bill. You also avoid the finance charges and debt that can come with a credit card if not paid off in full." *See* https://www.consumer-action.org/english/articles/understanding_debit_cards (last visited July 11, 2019).

54.     That is a large part of the reason that debit cards have risen in popularity. In 2016, the number of terminals that accept debit cards in the United States had increased by approximately 1.4 million compared to 2011, and with that increasing ubiquity, consumers have (along with credit cards) viewed debit cards "as a more convenient option than refilling their wallets with cash from

an ATM."[1]

55.     Not only have consumers increasingly switched from cash to debit cards, but they believe that a debit card purchase is the fundamental equivalent of a cash purchase, with the swipe of a card equating to handing over cash, permanently and irreversibly.

**E.  Hudson Abuses Contractual Discretion**

56.     In the alternative, Hudson's policy was a breach of the express terms of the numerous account documents. In addition, Hudson exploits contractual discretion to the detriment of accountholders when it uses these policies.

57.     It was in bad faith for Hudson to charge OD Fees in the manner described above. To do so, it abused discretion it provided itself to assessed OD Fees.

58.     Hudson uses these contractual discretion points unfairly to extract OD Fees on a verification process that no reasonable consumer would believe could cause OD Fees.

**F.  Plaintiff Zachmans's Experience**

59.     Ms. Zachman was wrongfully charged OD Fees on several occasions.

60.     As an example, on July 1, 2019, Ms. Zachman was assessed an OD Fee on a debit card transaction, despite the fact that the transaction was authorized and paid into a <u>positive</u> account balance prior to that day.  Further, at that time of authorization, positive funds were deducted immediately for the debit card transaction on which she was later assessed the OD Fee.

## CLASS ALLEGATIONS

61.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity,

---

[1] Maria LaMagna, *Debit Cards Gaining on Case for Smallest Purchases,* MarketWatch, Mar. 23, 2016, http://www.marketwatch.com/story/more-people-are-using-debit-cards-to-buy-a-pack-of-gum-2016-03-23 (last visited July 11, 2019).

commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

62.     The proposed classes ("Classes") are defined as:

All Hudson Bank, N.A. checking accountholders in the United States who, during the applicable statute of limitations period through the date of class certification, were charged OD Fees on transactions that did not overdraw their checking accounts (the "National APPSN Class");

All Hudson checking accountholders in the state of New York who, during the applicable statute of limitations period through the date of class certification, were charged OD Fees on transactions that did not overdraw their checking accounts (the "New York APPSN Subclass");

63.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

64.     Excluded from the Classes are Hudson, its parents, subsidiaries, affiliates, officers and directors; any entity in which Hudson has a controlling interest; all customers who make a timely election to be excluded; governmental entities; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

65.     The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identities of whom are within the knowledge of and can be ascertained only by resort to Hudson's records.

66.     The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all members of the Classes, was charged OD Fees by Hudson on transactions that did not actually overdraw his checking account. The representative Plaintiff, like all members of the Classes, has been damaged by Hudson's misconduct in that they have been charged OD Fees or NSF Fees that violate the account contract. Furthermore, the factual basis of Hudson's misconduct is common to all members of the Classes and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

67.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members.

68.     Among the questions of law and fact common to the Classes are whether Hudson:

a.      imposed OD Fees on debit card transactions when those transactions did not overdraw accounts; and

b.      the declaratory relief to which Class members are entitled.

69.     Plaintiff's claims are typical of the claims of other members of the Classes, in that they arise out of the same wrongful overdraft policies and practices of Hudson.  Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other member of either Class.

70.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

71.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual member's claim is small relative to the complexity of the litigation, and due to the financial resources of Hudson, no member of either Class could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Classes will continue to suffer losses and Hudson's misconduct will proceed without remedy.

72.     Even if members of the Classes could themselves afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.

14

Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the APPSN Class)**

73.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

74.     Plaintiff and Hudson have contracted for bank account deposit, checking, ATM, and debit card services.

75.     Hudson breached promises included in the account documents as described herein when it charged OD Fees on APPSN transactions that did not overdraw checking accounts.

76.     Under applicable state law, good faith is an element of every contract pertaining to the assessment of overdraft fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

77.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A failure to act in good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing include evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

78.     Hudson has also breached the covenant of good faith and fair dealing in its account

16

agreement with customers through its overdraft policies and practices as alleged herein.

79.     Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

80.     Plaintiff and members of the Classes have sustained damages as a result of Hudson's breach of the contract.

**SECOND CLAIM FOR RELIEF**
**Violations of New York General Business Law 349**
**(On Behalf of Plaintiff and the New York Subclass)**

81.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

82.     This claim is asserted on behalf of the members of the New York Sub-Class under New York's consumer protection law, New York General Business Law§ 349, *et seq.* ("GBL § 349").

83.     Hudson engaged in deceptive acts or practices relating to the imposition of overdraft fees on consumers, in violation of GBL § 349, N.Y. Gen. Bus. Law § 349(a).

84.     GBL § 349 prohibits "[ d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." *Id.*

85.     Hudson engaged in deceptive acts or practices, unlawful conduct, made affirmative misrepresentations, or otherwise violated GBL § 349 by, *inter alia,* knowingly and intentionally employing an unfair and deceptive policy as described herein.

86.     Hudson also engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated GBL § 349.

87.     Hudson's deceptive acts or practices were "consumer-oriented." *E.g., Wilson v. Northwestern Mut. Ins. Co.,* 625 F.3d 54, 64 (2d Cir. 2010) (quoting *Oswego Laborers' Local 214*

*Pension Fund v. Marine Midland Bank, NA.,* 85 N.Y.2d 20, 623 N.Y.S.2d 529, 532-33, 647 N.E.2d 741 (1995)).

88.     Hudson intended that Plaintiff and the members of the New York Sub-Class rely on the acts of concealment and deception, so that Plaintiff and the members of the New York Sub-Class would incur additional OD Fees.

89.     Hudson's conduct caused Plaintiff and the members of the New York Subclass to suffer ascertainable losses in the form of improper OD Fees that, but for Hudson's unfair and deceptive policies, would not otherwise have been imposed.

90.     A causal relationship exists between Hudson's unlawful conduct and the ascertainable losses suffered by Plaintiff and the members of the New York Sub-Class. Had Hudson kept the promises contained in its "free trial" marketing, Plaintiff and the members of the New York Sub-Class would not have incurred certain OD Fees in violation of GBL § 349.

91.     As redress for Hudson's repeated and ongoing violations of GBL § 349, Plaintiff and the New York Sub-Class are entitled to, *inter alia,* actual damages, treble damages, declaratory relief, and reasonable attorney's fees. N.Y. Gen. Bus. Law. § 349(h).

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF THE EFTA (REGULATION E), 12 C.F.R. § 1005, et seq.;**
**AUTHORITY DERIVED FROM 15 U.S.C. § 1693 et seq.))**
**(On Behalf of Plaintiff and the APPSN Class)**

92.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

93.     Hudson charged Plaintiff overdraft fees as a result of ATM and non-recurring debit card transactions authorized into a positive balance.

94.     Hudson failed to provide Plaintiff disclosures that fully and accurately described

Hudson's overdraft service – i.e., the service under which Hudson would assess overdraft fees as a result of ATM and non-recurring debit card transactions authorized into a positive balance. Specifically, prior to enrolling Plaintiff in the service and charging Plaintiffs overdraft fees as a result of ATM and non-recurring debit card transactions authorized into a positive balance, Hudson failed to provide Plaintiff a segregated, non-misleading and truthful description of its practices, as part of the overdraft service, in assessing overdraft fees as a result of one-time debit card transactions, as required by 12 C.F.R. § 1005.17.

95.     Plaintiff was assessed $34.00 overdraft fees as a result of debit card transactions being authorized into a positive balance, without her informed, affirmative and written consent, in violation of Regulation E (12 C.F.R. §§1005 et seq.), whose "primary objective" is "the protection of consumers" (§1005.l(b)) and which "carries out the purposes of the [Electronic Fund Transfer Act 15 U.S.C. §§1693 et seq.), the "EFTA"] (§1005. l(b)), whose express "primary objective" is also "the provision of individual consumer rights" (15 U.S.C. §1693(b)).

96.     Moreover, in the Overdraft Privilege Disclosure, Hudson states that "[a]n **overdraft** occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." This statement is false and misleading, also in violation of 12 C.F.R. § 1005.17 because, *inter alia*, Hudson assesses overdraft fees when there is in fact enough money in the account to pay for the transaction at issue, as alleged herein occurred numerous times to Plaintiff. As a result of violating Regulation E's prohibition against assessing overdraft fees on ATM and non-recurring debit card transactions without obtaining affirmative consent to do so, Hudson has harmed Plaintiff and the Class.

97.     Due to Hudson's violation of Regulation E (12 C.F.R. § 1005.17), Plaintiff and  all members of the Classes are entitled to, and do seek, actual and statutory damages, as well as

attorneys' fees and  costs of suit pursuant to 15 U.S.C.A. § 1693m.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the Classes demand a jury trial on all claims so triable and judgment as follows:

a.      Declaring Hudson's OD Fee policies and practices to be wrongful, unfair and unconscionable;

b.      Restitution of all OD Fees paid to Hudson by Plaintiff and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

c.      For each member of the National APPSN Class, actual damages in an amount according to proof;

d.      For each member of the New York APPSN Class, actual damages, statutory damages, and/or treble damages in accordance with Pennsylvania law;

e.      Pre-judgment interest at the maximum rate permitted by applicable law;

f.      Costs and disbursements incurred by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

g.      Such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

A trial by jury is hereby demanded.


Dated: February 21, 2020                    Respectfully submitted,

                                            **REESE LLP**

                                            */s/ Michael R. Reese*
                                            Michael R. Reese
                                            *mreese@reesellp.com*
                                            Sue J. Nam
                                            *snam@reesellp.com*
                                            100 West 93rd Street, 16th Floor
                                            New York, New York 10025
                                            Telephone:  (212) 643-0500
                                            Facsimile:  (212) 253-4272


                                            **KALIEL PLLC**
                                            Jeffrey D. Kaliel
                                            *jkaliel@kalielpllc.com*
                                            Sophia G. Gold
                                            *sgold@kalielplllc.com*
                                            1875 Connecticut Ave. NW 10th Floor
                                            Washington, D.C.  20009
                                            Telephone: (202) 340-4783


                                            ***Counsel for Plaintiff and the Proposed Classes***