IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE ZACHMAN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> HUDSON VALLEY FEDERAL CREDIT UNION, <br><br> Defendant. | Case No. 7:20-cv-01579-VB |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE
ALTERNATIVE, TO STAY THIS ACTION IN FAVOR OF ARBITRATION**

Defendant Hudson Valley Credit Union [1] ("HVCU"), by its counsel, presents its Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint or, in the alternative, to stay the action in favor of arbitration pursuant to the Parties' agreement.

## INTRODUCTION

It is axiomatic that when two parties contract to arbitrate claims arising from an agreement, the parties cannot, as a matter of law, simply ignore the arbitration provision and file a lawsuit. When Nicole Zachman became a member-owner of HVCU, she agreed to abide by the Account Agreement that contains a "Mandatory Arbitration" provision and a "Class Action Waiver." Thus, Zachman agreed to: (1) submit to arbitration "[a]ny claim, dispute, or controversy . . . arising out of or relating to [their] Agreement;" and (2) voluntarily waive her right to proceed with a class action. Contrary to her agreement, however, Zachman filed this lawsuit, on a class action basis.

---

[1] Formerly known as Hudson Valley Federal Credit Union until October 1, 2019. (Timmerman Aff. ¶ 1.)

The claims alleged in this action all arise directly from a purported breach of the Account Agreement—the precise type of dispute the arbitration provision explicitly covers. Consequently, this Court should dismiss Zachman's Complaint or, in the alternative, stay this action until the arbitration of Zachman's claims on an individual basis have been completed in accordance with the Account Agreement.

## STATEMENT OF FACTS

HVCU is a not-for-profit cooperative and financial institution that provides account and loan services to its members. (Timmerman Aff. ¶ 4.) HVCU's assets are owned by its members, and it is democratically controlled by its members. (*Id.*)

Zachman is a HVCU member and keeps a checking account at HVCU to the present day. (*Id.* ¶ 5.) When becoming a member of HVCU, Zachman agreed to comply with HVCU's Truth-In-Lending Savings Disclosure Account Agreement and the Electronic Fund Transfers Disclosure (collectively, "Account Agreement"), among other documents (collectively, the Account Documents"). (*Id.* ¶ 6.)

Each time HVCU amended its Account Agreement, it gave notice to its members by posting the new account agreement on its website. (*Id.* ¶ 6.); *see also* "Account Disclosures," https://www.hvcu.org/Personal/Resources/Account-Disclosures, last visited June 26, 2020. The Account Agreement, and indeed, all iterations of the Account Agreement since September 2014 have included a "Mandatory Arbitration" provision and a "Class Action Waiver." (*Id.* ¶ 7.) Since the inclusion of the mandatory arbitration provision and class action waiver in 2014, Zachman continued to maintain her account at HVCU and still continues to maintain that account to the present. (*Id.* ¶ 5.)

The Account Agreement requires that parties resolve any disputes in arbitration on an individual basis. More specifically, the 2020 Account Agreement states in pertinent part:

> **Mandatory Arbitration.** Any claim, dispute, or controversy ("Claim") arising out of or relating to this Agreement or the relationships among the parties hereto shall be resolved by one arbitrator through binding arbitration administered by the American Arbitration Association ("AAA") in Dutchess County in the State of New York, under the AAA Consumer Rules in effect at the time the Claim is filed ("AAA Rules"). Copies of the AAA Rules and forms can be located at www.adr.org, or by calling 1.800.778.7879. The arbitrator's decision shall be final, binding, and non-appealable. Judgment upon the award may be entered and enforced in any court having jurisdiction. The costs of the arbitration, including arbitrator's fees, shall be borne equally by the parties to the arbitration, unless the arbitrator orders otherwise. This clause is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act. Neither party shall sue the other party other than as provided herein or for enforcement of this clause or of the arbitrator's award; any such suit may be brought only in Federal District Court or, if any such court lacks jurisdiction, in any state court that has jurisdiction. The arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, unconscionability, arbitrarily, enforceability, or formation of this Agreement including any claim that all or any part of the Agreement is void or voidable. However, the preceding sentence shall not apply to the clause entitled "Class Action Waiver."
>
> **Class Action Waiver.** Any Claim must be brought in the respective party's individual capacity, and not as a plaintiff or class member in any purported class, collective, representative, multi-plaintiff, or similar proceeding ("Class Action"). The parties expressly waive any ability to maintain any Class Action in any forum. The arbitrator shall not have authority to combine or aggregate similar claims or conduct any Class Action nor make an award to any person or entity not a party to the arbitration. Any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void, or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator. THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT TO LITIGATE THROUGH A COURT, TO HAVE A JUDGE OR JURY DECIDE THEIR CASE AND TO BE A PARTY TO A CLASS OR REPRESENTATIVE ACTION. HOWEVER, THEY UNDERSTAND AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY, THROUGH ARBITRATION.

(Timmerman Aff. Ex. 1.) Thus, Zachman cannot feign ignorance to the binding nature of this language, which precludes her from filing and/or participating in a class action. Despite the plain and unambiguous language, Zachman filed the instant action on February 21, 2020.

**LEGAL STANDARD**

Arbitration agreements are subject to the Federal Arbitration Act ("FAA"). The FAA provides for a stay of the proceedings pending arbitration. 9 U.S.C. § 3; *see also Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). However, courts have discretion to dismiss rather than stay an action where, as here, all of the claims in the complaint must be submitted to arbitration, and have done so where defendants have sought dismissal. *Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) ("Where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings."); *see, e.g., Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 491 (S.D.N.Y. 2008) (granting motion to compel arbitration and dismissing complaint); *Vittengl v. Wurld Media, Inc.*, No. 06 Civ 1513, 2007 WL 1063655, at *1-2 (N.D.N.Y. Apr. 5, 2007) (finding all claims subject to arbitration "because there are no issues remaining in this dispute that might properly be decided by the district court, it is appropriate to dismiss the action rather than to stay it"); *Spencer-Franklin v. Citigroup/Citibank N.A.*, No. 06 Civ 3475, 2007 WL 521295, at *4 (S.D.N.Y. Feb. 21, 2007) (observing that "[a]ll courts of which we are aware have followed the rule" that a court may dismiss a case in which all claims must be arbitrated), *adopted by* 2007 WL 1052451 (S.D.N.Y. Apr. 5, 2007).

**ARGUMENT**

**I.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED IN FAVOR OF ARBITRATION.**

As a fundamental premise, arbitration is strictly a matter of consent. *See Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1415 (Apr. 24, 2019). The governing statute, the Federal Arbitration Act ("FAA") requires courts to enforce arbitration agreements according to their express terms. *See id.* at 1415. It follows then, by extension, that courts may not later attempt to reshape

traditional, individualized arbitration by mandating classwide arbitration procedures without the express consent of the parties. *See id*. at 1417-18. To do so, would be inconsistent with the FAA's clear directives and mandates. *See id.* The U.S. Supreme Court recently held in the *Lamps Plus* decision that even an arbitration agreement deemed ambiguous cannot provide the necessary contractual basis for compelling class arbitration because courts are not permitted to infer parties' consent to participate in a class arbitration without an affirmative basis rooted in contract for concluding that the parties have so expressly agreed. *See id.* at 1415-16.

### A. The Federal Arbitration Act Controls and Requires Arbitration of Plaintiff's Claims.

The FAA broadly provides that: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Conception*, 131 S.Ct. 1740, 1745 (2011). In enacting the FAA, Congress intended to overcome courts' past reluctance to enforce arbitration agreements by placing them on equal footing with other contracts and establishing a strong federal policy in favor of arbitration. *Id*. (noting that the FAA reflects a "liberal policy favoring arbitration"); *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (holding that the FAA represented a "congressional declaration of a liberal federal policy favoring arbitration agreements"); *CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665, 669 (2013) (acknowledging the strong liberal federal policy in favor of arbitration agreements); *JLM Indus.. Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (observing that the FAA establishes a "strong federal policy favoring arbitration as an alternative means of dispute resolution.")

The FAA, and the strong federal policy favoring arbitration that it embodies, require courts

to "rigorously enforce agreements to arbitrate." *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Moreover, any ambiguities or doubts as to the scope of an arbitration agreement are to be resolved in favor of arbitration. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) ("The FAA embodies the 'liberal federal policy favoring arbitration agreements' and 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'").

Courts in the Second Circuit ask three questions when considering motions in favor of arbitration: (1) "whether the parties agreed to arbitrate"; (2) whether "the scope of that agreement" covers the claims; and (3) "if federal statutory claims are asserted, .... whether Congress intended those claims to be nonarbitrable." *Oldroyd v. Elmira Sav. Bank.* FSB, 134 F.3d 72, 75-76 (2d Cir. 1998). If the district court finds that these issues are satisfied in favor of arbitration, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

Here, (1) the parties agreed to arbitrate; (2) the scope of that agreement covers the claims alleged in Zachman's Complaint; and (3) Zachman's claim under the Electronic Fund Transfer Act ("EFTA") is arbitrable. This Court should therefore dismiss the action without prejudice or, alternatively, stay the proceedings pending arbitration.

### B. Plaintiff Entered Into a Valid Agreement to Arbitrate the Claims at Issue on an Individual Basis.

Here, Zachman entered into a valid and binding contract with HVCU which included her express agreement to submit "[a]ny claim, dispute, or controversy . . . arising out of or relating to [their] Agreement"—including the claims she has brought herein—to arbitration and to waive any

6

right to proceed with a class action.

The FAA specifies that valid contracts to arbitrate shall be enforced, 9 U.S.C. §2, but state law applies in determining whether a valid arbitration agreement has been formed. *See First Options of Chicago. Inc. v. Kaplan,* 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."). To determine whether there is an agreement to arbitrate, "courts apply generally accepted principles of contract law." *Arakawa v. Japan Network Group*, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) (citation omitted).

Zachman admits in her Complaint that she entered into a contractual relationship with HVCU. *See, e.g.,* Compl. ¶ 74; *see also Page v. Alliant Credit Union*, No. 1:19-CV-5965, 2020 WL 2526488, at *1 (N.D. Ill. May 18, 2020) (by joining the credit union, plaintiffs "agreed to the terms and conditions of the credit union's membership agreement and any amendments to the agreements"). The uncontroverted evidence shows that Zachman opened a checking account with HVCU. Compl. ¶ 8. Throughout her Complaint, Zachman refers to the HVCU "account documents" that govern her account, her relationship with HVCU, and the assessment of fees she challenges. *See* Compl., *passim*. As discussed above, these "account documents" (i.e., the Account Agreement) have included a mandatory arbitration provision and a class action waiver since 2014. (Tellerman Aff. ¶ 7.)

More importantly, Zachman agreed to the terms in the Account Agreement, including the terms of the mandatory arbitration provision, by maintaining her HVCU checking account and continuing the use of said account. *See, e.g.,* Compl. at ¶ 10-11, 60. New York law is clear that "regular use of a credit card constitutes sufficient evidence of the card user's consent to the terms of the agreement governed by the account." *McCormick v. Citibank, NA*, 15-CV-46-JTC, 2016

WL 107911, at *4 (W.D.N.Y. Jan. 8, 2016); *see also Valle v. ATM Nat'l, LLC*, 14–CV–7993, 2015 WL 413449, at *3 (S.D.N.Y. Jan. 30, 2015) (collecting cases, noting that continued use of an account constitutes acceptance of revised terms of use, including arbitration agreement); *Anonymous v. JP Morgan Chase & Co.*, 05–Civ. 2442, 2005 WL 2861589, at *4 (S.D.N.Y. Oct. 31, 2005) (finding that continued use of a credit card meant that plaintiff had "agreed to the terms of the Arbitration Agreement"). Here, there is uncontested evidence that Zachman regularly uses her HVCU debit card and/or checking account. *See, e.g.,* Compl. at ¶ 8, 10-11, 59-60. In doing so, Zachman agreed to the terms of the Account Agreement, including agreeing to arbitrate "[a]ny claim, dispute, or controversy . . . arising out of or relating to" said Agreement.

Indeed, federal courts in New York have recognized the binding effect of account agreements on account holders. *Biggs v. Midland Credit Mgmt., Inc.,* No. 17-CV-340 (JFB)(ARL), 2018 WL 1225539, at *8–9 (E.D.N.Y. Mar. 9, 2018) (granting motion to dismiss in favor of binding arbitration where credit card account agreement contained arbitration provision); *Ahmed v. Citibank, N.A*, No. 19-CV-4439-MKB-SJB, 2020 WL 2988666, at *7 (E.D.N.Y. June 2, 2020) (dismissing case and finding arbitration provision in account agreement to be valid and enforceable).

In sum, given the unrebutted evidence that Zachman opened a checking account, admitted to having a contractual relationship with HVCU that is governed by the account documents, and continued to use her checking account over several years, there is a a valid agreement to arbitrate. *See Alliant Credit Union*, 2020 WL 2526488 at *3 (finding arbitration provision in credit union's account agreement to be valid and enforceable). Accordingly, this Court must weigh the first part of the Second Circuit's three-part test in favor of dismissing this action.

### C. Plaintiff's Claims Fall Squarely Within the Scope of the Account Agreement's Arbitration Provision.

Initially, the parties here, through a "delegation provision," agreed that the *arbitrator* will decide not only the merits of their dispute, but also threshold or "'gateway' questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 529, 202 L Ed.2d 480 (2019). The very contract Zachman is suing on expressly states, "The arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, unconscionability, arbitrarily, enforceability, or formation of this Agreement." Accordingly, to the extent Zachman even attempts to contest whether the arbitration and class action waiver provisions apply, that question must be decided by the arbitrator and the case must be dismissed.

Even if the Court were to consider the issue, there can be no dispute that Zachman's claims fall within the scope of the mandatory arbitration provision because she specifically alleges a breach of the Account Agreement by HVCU as the result of HVCU's actions regarding her account. The unambiguous language of the mandatory arbitration provision required Zachman to arbitrate any claim or dispute relating to or arising out of her HVCU account (i.e., "Any claim, dispute, or controversy ('Claim') arising out of or relating to this Agreement . . . Shall be resolved by one arbitrator through binding arbitration . . .").

In determining whether a particular arbitration provision encompasses a plaintiff's claim, a court must resolve any ambiguities concerning the scope of the arbitration agreement in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration");

9

*see also JLM Indus., Inc. v. Stolt-Nielsen SA.* 387 F.3d 163, 171 (2d Cir. 2004) (quoting *Moses H. Cone,* 460 U.S. at 24-25). This standard requires courts to "construe arbitration clauses as broadly as possible." *Oldroyd,* 134 F.3d 72 at 76 (internal quotation marks and citation omitted).

This standard gains even greater force when the arbitration provision is broad, as here, covering any "claim, dispute, or controversy . . . arising out of or relating to this Agreement." "[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." *Id.* (quoting *WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 74 (2d Cir. 1997)).

Zachman asserts HVCU breached the Account Agreement as a result of its purported "assessment and collection of Overdraft Fees ('OD Fees') or insufficient funds fees ('NSF Fees') on accounts that were not actually overdrawn." Compl. ¶ 1. Zachman contends the alleged practices violate the Account Agreement, the covenant of good faith and fair dealing, New York's consumer protection law, and the Electronic Fund Transfer Act. Compl. ¶¶ 73-97. The Arbitration Provision requests the arbitration of any "claim, dispute, or controversy ("Claim") arising out of or relating to this [Account] Agreement." This language unquestionably covers each of the claims asserted by Zachman. Indeed, all of these claims are directly and closely related to, and arise directly from Zachman's contractual relationship with HVCU, and are covered by the Account Agreement. In any event, ambiguity in this regard must be resolved in favor of arbitration. *Guyden*, 544, F.3d 376 at 382 ("[A]s a matter of federal law, any doubts concerning the scope of arbitrage issues should be resolved in favor of arbitration."). Accordingly, this Court must weigh this second factor—whether Zachman's claims fall within the scope of the arbitration provision—in favor of dismissing this action.

### D. Plaintiff's EFTA Claim is Subject to Arbitration.

Furthermore, as to the third and final factor, there is no question that Zachman's EFTA claim is arbitrable. The Supreme Court has repeatedly enforced agreements to arbitrate federal statutory claims, holding that the mere fact that a claim is based on a federal statute cannot overcome the strong presumption in favor or arbitration. *See, e.g., Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79 (2000) (Truth in Lending); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991) (Age Discrimination in Employment Act); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477 (1989) (Securities Act of 1933); *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220 (1987) (Securities Exchange Act of 1934 and RICO); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth. Inc.,* 473 U.S. 614, 628 (1985) (Sherman Antitrust Act).

Consistent with this policy, federal courts have frequently found EFTA claims to be subject to arbitration. *See, e.g., Pitlor v. Charles Schwab Corp*., No. 8:19CV95, 2019 WL 2076797, at *3 (D. Neb. May 10, 2019) (concluding that EFTA claims are arbitrable); Johnson v. W. Suburban Bank, 225 F.3d 366, 378–79 (3d Cir. 2000) (holding claims arising under the EFTA may be subject to arbitration); *Williams v. Champs Auto Sales, Inc.*, No. 14–cv–12866, 2014 WL 6886546, at *2 (E.D. Mich. Dec. 4, 2014) ("EFTA claims may be subject to mandatory arbitration."); *Byrd v. SunTrust Bank*, No. 2:12–cv–02314–JPM–CGC, 2013 WL 3816714, at *15 (W.D. Tenn. July 22, 2013) (holding that pursuant to the parties' arbitration agreement, EFTA claims should be arbitrated); *Guadagno v. E*Trade Bank*, 592 F.Supp.2d 1263, 1272 (C.D. Cal. 2008) ("Claims for violation of the EFTA ... are arbitrable."); *Novak v. JP Morgan Chase Bank, N.A.*, No. 06–14862, 2008 WL 907380, at *1, 9 (E.D. Mich. Mar. 31, 2008) ("[C]laims under the EFTA are not exempt from arbitration."). Accordingly, Zachman's EFTA claim is subject to arbitration.

### E. Courts Have Uniformly Held Arbitration Agreements, Including Class Action Waivers to be Valid and Binding.

Lastly, arbitration must be compelled on an individual basis because the Account Agreement includes a "Class Action Waiver." Under New York law, a "contractual proscription against class actions … is neither unconscionable nor violative of public policy." *Ranieri v. Bell Atl. Mobile*, 759 N.Y.S. 2d 448 (1st Dep't 2003), *leave to appeal denied*, 807 N.E. 2d. 290 (N.Y. 2003); *see Bar-Ayal v. Time Warner Cable Inc.*, No. 03 Civ. 9905, 2006 WL 2990032, at *14-16 (S.D.N.Y. Oct. 16, 2006) (rejecting claim that arbitration clause barring class action was unconscionable under New York law); *Nayal v. HIP Network Servs. IPA, Inc.,* 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) (rejecting similar argument that arbitration provision which effectively barred class actions was unconscionable under New York law).

Moreover, the U.S. Supreme Court has already conclusively held that class action waivers are valid and binding: "parties may agree to limit the issues subject to arbitration, to arbitrate by specific rules, and to limit with whom a party will arbitrate its disputes" and that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Concepcion,* 563 U.S. 333 at 344. Because the Class Action Waiver is valid and binding, Zachman must pursue her claim on an individual basis in arbitration.

In sum, the parties entered into a valid and binding arbitration agreement, Zachman's dispute with HVCU falls within the scope of that arbitration agreement, and her EFTA claim is arbitrable. As such, all three parts of the Second Circuit's test for determining whether arbitration is appropriate are met and satisfied. Accordingly, once the case is pursued in arbitration as required, there would be nothing left here for the Court to consider or resolve. This Court would be making an impermissible advisory opinion. Therefore, the Court should dismiss the action.

## II.     IN THE ALTERNATIVE, THIS ACTION SHOULD BE STAYED IN FAVOR OF ARBITRATION.

Based on the arbitration provision in the Account Agreement, the case should be dismissed, but in the alterantive, HVCU asks the Court to refer Zachman's claims to arbitration and to stay this action pending the conclusion of arbitration. Section 3 of the FAA provides that a court, upon determining that an action before it is subject to an enforceable arbitration provision, "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Oldroyd* 134 F.3d 72 at 75.  Because Zachman's claims against HVCU are subject to an enforceable arbitration provision, this Court should at a minimum stay this action pending such arbitration.

### **CONCLUSION**

For the foregoing reasons, Hudson Valley Credit Union respectfully requests that this action be dismissed in its entirety or, in the alternative, be stayed in favor of arbitration.

Dated: July 1, 2020                              /s/Brian S. Gitnik
                                                 Brian S. Gitnik
                                                 Litchfield Cavo LLP
                                                 420 Lexington Avenue, Suite 2104
                                                 New York, New York 10170
                                                 (212) 792-9772
                                                 gitnik@litchfieldcavo.com

                                                 James R. Branit
                                                 Keith L. Gibson
                                                 Litchfield Cavo LLP
                                                 303 West Madison Street, Suite 300
                                                 Chicago, Illinois  60606
                                                 (312) 781-6562 (Branit)
                                                 (312) 781-6647 (Gibson)
                                                 branit@litchfieldcavo.com
                                                 gibsonk@litchfieldcavo.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 1, 2020, a copy of the above document has been delivered to the following persons by the ECF system or by Electronic Mail and/or United States mail first class to:

>Jeffrey D. Kaliel
>Sophia G. Gold
>KALIEL PLLC
>1875 Connecticut Avenue, NW, 10th Flr
>Washington, DC 20009
>Telephone: (202) 350-4783
>Facsimile: (202) 615-3948
>jkaliel@kalielpllc.com
>sgold@kalielpllc.com

>Michael R. Reese
>Sue J. Nam
>REESE LLP
>100 West 93rd Street, 16th Floor
>New York, New York 10025
>Telephone: (212) 643-0500
>Facsimile: (212) 253-4272
>mreese@reesellp.com
>snam@reesellp.com

>>/s/Brian S. Gitnik
>>Brian S. Gitnik