```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
NICHOLE ZACHMAN, on behalf of herself        :
and all others similarly situated,           :
                        Plaintiff,           :
                                             :    OPINION AND ORDER
v.                                           :
                                             :    20 CV 1579 (VB)
HUDSON VALLEY FEDERAL CREDIT                 :
UNION,                                       :
                        Defendant.           :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Nichole Zachman brings this putative class action against defendant Hudson Valley Federal Credit Union ("HVCU"), alleging claims for breach of contract and breach of the covenant of good faith and fair dealing, as well as for violations of Section 349 of New York's General Business Law, the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 et seq., and its implementing regulation, known as Regulation E, 12 C.F.R. § 1005 et seq. Plaintiff contends HVCU assessed and collected overdraft fees and insufficient funds fees on checking accounts that were not actually overdrawn.

Now pending is defendant's motion to dismiss the complaint or, in the alternative, to stay this action in favor of arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. (Doc. #14).[1]

For the following reasons, the Court construes the motion to dismiss as a motion to compel arbitration, and DENIES the motion to compel arbitration.

---

[1] Although not cited by defendant, Section 4 of the FAA provides that "[a] party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which . . . would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."

1

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 1332(d), and 1367.[2]

**BACKGROUND**

For the purpose of ruling on the motion to compel arbitration, the Court considers the pleadings and the parties' submissions in support of and in opposition to the pending motion.

HVCU is a not-for-profit credit cooperative and financial institution that provides checking account services and other financial products to its members. Plaintiff is an active member of HVCU, where she maintains a checking account and a debit card connected thereto. It is undisputed that when plaintiff opened her account in 2012, she agreed to abide by the terms of a Truth-in-Savings Standard Disclosure and Account Agreement ("Account Agreement"). The 2012 Account Agreement did not contain mandatory arbitration or class action waiver provisions.

In September 2014, HVCU revised the 2012 Account Agreement, adding mandatory arbitration and class action waiver provisions. HVCU posted this revised Account Agreement to its website. During her deposition, Joyce Keehan, defendant's senior compliance officer and Fed. R. Civ. P. 30(b)(6) witness, testified that the terms of the revised Account Agreement became effective immediately upon publishing to the website. HVCU periodically updates the Account Agreement and replaces each prior version on its website, removing all prior versions.

The most current version of the Account Agreement is posted on HVCU's website on the "Account Disclosures" webpage, which states, "[t]he following disclosures explain the terms and

---

[2] The complaint alleges the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA") because at least one of the putative class members and defendant are diverse and the aggregate claims of the class exceed $5 million. Even assuming arguendo the Court has jurisdiction over this action pursuant to CAFA, the Court also appears to have federal question jurisdiction based on plaintiff's claim pursuant to the EFTA, as well as supplemental jurisdiction over plaintiff's state law claims. See 28 U.S.C. §§ 1331, 1367.

conditions associated with your HVCU accounts.  You received these agreements upon opening your accounts with the credit union, but for your easy reference we have provided current copies here in PDF format." (Doc. #22-4 at ECF 4).³  Since December 2016, users have been able to access the Account Agreement via the HVCU website in two ways.  First, a user may run a search for "Truth-In-Savings disclosure or account disclosures" in the HVCU website's search bar.  (Doc. #22-3 ("Keehan Dep. Tr.") at ECF 16).  This search brings the user to the "Account Disclosures" webpage, where the user must click on a hyperlink to view the Account Agreement.  When selected, the Account Agreement opens in a separate Internet browser tab or window for viewing.  Second, a user may reach the "Account Disclosures" webpage by selecting the "Resources" tab on the right-side of an options menu-bar on HVCU's website, and then selecting "Account Disclosures" from a drop-down menu.  (Doc. #22 ("Opp.") at ECF 9; Doc. #22-4 at ECF 3–5).

Ms. Keehan testified that HVCU members may also obtain a copy of the current Account Agreement by requesting that a hard copy be mailed to them or by going to a physical HVCU branch and requesting a hard copy.

In an affidavit, Mark Timmerman, HVCU's vice president of legal, corporate compliance, and risk, explains that to utilize HVCU's online banking services, as plaintiff does, members must first register their accounts online.  Timmerman states that HVCU converted to a new online banking platform in October 2019.  According to Mr. Timmerman, registration for HVCU's online banking service requires that users first click through and agree to various HVCU disclosures, including an "Internet Banking Disclosure and Agreement." ("Internet Banking Agreement").

---

³     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

The Internet Banking Agreement, excerpted in defendant's reply brief and in Mr. Timmerman's affidavit, states in pertinent part:

> If you do not agree to the terms of this Agreement do not access or use the Internet Banking services . . . We may change terms or amend this Agreement from time to time without notice or as otherwise provided by law . . . Each of your accounts at Hudson Valley Credit Union is also governed by the applicable account disclosures. Your use of the services is your acknowledgement that you have received these agreements and agree to be bound by them.

(Doc. #23 at ECF 12).[4] It further states:

> By clicking "I agree to the above terms and conditions" you agree to be bound by the terms and conditions identified in this Agreement, the terms and conditions of HVCU's Electronic Funds Transfer Disclosure & Account Agreement, as amended, HVCU's Truth in Savings Disclosure & Account Agreement, as amended and other relevant agreement, all of which are incorporated herein by reference as though fully set forth. You may access our Electronic Fund Transfers Disclosure and Agreement at https://www.hvcu.org/Personal/Resources/Account-Disclosures. You may access our Truth in Savings Disclosure and Account Agreement at https://www.hvcu.org/Personal/Resources/Account-Disclosures.

(Id. at ECF 13). According to Timmerman, plaintiff first signed into her online banking service account on October 23, 2019.

In her declaration, plaintiff asserts that at no time was she aware HVCU revised the 2012 Account Agreement to add mandatory arbitration or class action waiver provisions. Plaintiff also states that since opening her account in 2012, she has only accessed HVCU's website to utilize online banking services, including viewing banking statements, and in one instance, to inquire about an automobile loan. Plaintiff claims she has never searched for or viewed the Account Agreement on the HVCU website.

---

[4] Mr. Timmerman's affidavit and the exhibits thereto are incorrectly appended to defendant's reply brief as part of the main document rather than separately filed supporting documents as required by the Court's Electronic Case Filing Rules & Instructions. See ECF Rules & Instructions, § 13.2. The reply brief ("Reply"), the Timmerman affidavit, and the exhibits thereto are all filed as Doc. #23.

Ms. Keehan testified she did not know whether HVCU mailed or e-mailed plaintiff a copy of the revised Account Agreement containing the mandatory arbitration and class action waiver provisions. She also testified HVCU did not post a notice of the added arbitration and class action waiver provisions in its quarterly newsletters or in members' electronic statements, or otherwise provide any written notice of those provisions to plaintiff. According to Keehan, the "only way that [HVCU] provided notice of the arbitration provision and class action waiver was by posting the new agreement that contained the arbitration provision and class action waiver to its website." (Keehan Dep. Tr. at ECF 12). Keehan further stated that when HVCU published the revised Account Agreement to its website, it did not implement a "banner" notification on the website homepage, provide a summary of any changes made to the Account Agreement on the webpage where the Account Agreement is hyperlinked, or otherwise indicate any changes had been made to the Account Agreement. (Id. at ECF 12–13, 16–17). Keehan also testified she has no evidence, and is not aware HVCU has any evidence, indicating plaintiff has accessed the Account Agreement through HVCU's website.

## DISCUSSION

I.   Motion to Compel Arbitration

Depending on the facts and arguments presented, a motion to dismiss based on an arbitration agreement may be treated as a motion to compel arbitration. See Wabtec Corp. v. Faiveley Transp. Malmo AB, 525 F.3d 135, 139–40 (2d Cir. 2008).[5] The motion must either "explicitly or implicitly ask[] the court to order arbitration." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016). When a movant manifests an intent to compel arbitration, district

---

[5]   Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

courts may "treat[] motions to dismiss based on mandatory arbitration clauses as motions to compel arbitration." Id. at 230.

Here, defendant's motion to dismiss manifests an intent to compel arbitration. Although it frames its argument regarding the arbitration clause as a motion to dismiss or, in the alternative, to stay pending arbitration, defendant argues plaintiff's claims must be arbitrated, sets forth a motion to compel standard, and engages in a lengthy analysis supporting its assertion that arbitration should take place here.

Accordingly, the motion to compel standard applies.

II.     Standard of Review

"In the context of motions to compel arbitration brought under the [FAA] . . . , the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir. 2003). Therefore, the Court "consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, and draws all reasonable inferences in favor of the non-moving party." Nicosia v. Amazon.com, Inc., 834 F.3d at 229.

In deciding whether to compel arbitration, a court must first decide whether the parties agreed to arbitrate. Spear, Leeds & Kellogg v. Cent. Life Assur. Co., 85 F.3d 21, 25 (2d Cir. 1996). Only if the Court concludes an agreement to arbitrate exists does it determine (i) the scope of the agreement to arbitrate; (ii) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (iii) if some, but not all, of the claims in the case are arbitrable,

whether to stay the balance of the proceedings pending arbitration. JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004).[6]

"The party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) (summary order). "This burden does not require the moving party to show initially that the agreement would be enforceable, merely that one existed." Id. (emphasis in original). Once that is established, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., 602 F.3d 113, 124 (2d Cir. 2010).

III.  Threshold Question of Arbitrability

Defendant argues the question of arbitrability has been "clearly and unmistakably" delegated to an arbitrator. (Reply at ECF 2).

The Court disagrees.

It is well settled that "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019). In other words, "if a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 71 (2010); Dedon GmbH v. Janus et Cie, 411 F. App'x 361, 363 (2d Cir. 2011) (summary order) (upholding "well-established precedent that where a party challenges the very existence of the contract

---

[6]  The parties do not dispute that plaintiff's claims fall within the scope of the mandatory arbitration provision. However, because the Court concludes the parties did not agree to arbitrate as further discussed below, it need not reach the issue of scope.

containing an arbitration clause, a court cannot compel arbitration without first resolving the issue of the contract's existence").

Because plaintiff directly challenges the very existence of an agreement to arbitrate, the Court—not an arbitrator—must decide whether a valid arbitration agreement exists.

IV. Agreement to Arbitrate Claims

Defendant next argues—pursuant to mandatory arbitration and class action waiver provisions added to the Account Agreement in 2014—that plaintiff agreed to submit to arbitration any claims arising out of the agreement and waived her right to proceed with a class action.[7]

The Court again disagrees.

A. Applicable Law

In determining whether a valid arbitration agreement exists, federal courts "apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Here, the applicable agreements are governed by New York law.

Under New York law, a fundamental basis for the existence of an enforceable contract is "a meeting of the minds" as to the essential terms and conditions and a "manifestation of mutual assent." Starke v. Squaretrade, Inc., 913 F.3d 279, 289 (2d Cir. 2019). The same principle

---

[7] Plaintiff also argues that the arbitration provision is unenforceable because HVCU failed to comply with its own modification provision in the 2012 Account Agreement, which requires HVCU to "provide thirty (30) days written notice of any new provisions of this Disclosure or any changes which adversely affect [Plaintiff]." (Opp. at ECF 18). Plaintiff is wrong. Despite the existence of a change-of-terms provision, "a party may propose, and the other party may accept, an alteration to an existing contract." Stone v. Golden Wexler & Sarnese, P.C., 341 F. Supp. 2d 189, 192, 192 n.1 (E.D.N.Y. 2004) (applying Virginia state law but noting that "the result would be materially the same under either New York or Virginia law").

applies to contract modifications.  "[P]arties may modify a contract by another agreement, by course of performance, or by conduct amounting to a waiver or estoppel."  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 783 (2d Cir. 2003).  "[F]undamental to the establishment of a contract modification is proof of each element requisite to the formulation of a contract, including mutual assent to its terms."  Id.  In both contract formation and modification, "[t]he manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."  Starke v. Squaretrade, Inc., 913 F.3d at 289.

"Defendant, who bears the ultimate burden of proving the existence of an agreement to arbitrate, must show that Plaintiff had sufficient notice of the arbitration provisions to establish a meeting of the minds."  Shron v. LendingClub Corp., 2020 WL 3960249, at *4 (S.D.N.Y. July 13, 2020) (citing Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 46 (2d Cir. 1993)).  An offeree must have actual notice of the revised contract terms or be "on inquiry notice of them and assent[] to them through conduct that a reasonable person would understand to constitute assent."  Starke v. SquareTrade, Inc., 913 F.3d at 289.

"Inquiry notice is actual notice of circumstances sufficient to put a prudent man upon inquiry."  Schnabel v. Trilegiant Corp., 697 F.3d 110, 120 (2d Cir. 2012).  "Whether a reasonably prudent user would be on inquiry notice turns on the clarity and conspicuousness of [the added] terms; in the context of web-based contracts . . . clarity and conspicuousness are a function of the design and content of the relevant interface."  Meyer v. Uber Techs., Inc., 868 F.3d 66, 75 (2d Cir. 2017).  "Thus, only if the undisputed facts establish that there is reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms will [a court] find that a contract has been formed."  Id.

One way that contracting parties may evince unambiguous assent to modified terms of a contract is when a user continues to use his or her account after receiving notice of revised contractual terms. See Valle v. ATM Nat., LLC, 2015 WL 413449, at *3 (S.D.N.Y. Jan. 30, 2015) (finding mutual assent established when plaintiff continued to use her credit card after defendant mailed letter and notice of changes to agreement); Anonymous v. JP Morgan Chase & Co., 2005 WL 2861589, at *4 (S.D.N.Y. Oct. 31, 2005) (finding "plaintiff agreed to the terms of the Arbitration Agreement" when there was "uncontested evidence . . . plaintiff used the Chase card and made payments to Chase . . . for several months").

B.   Actual Notice

Here, defendant has failed to establish plaintiff had actual notice of the mandatory arbitration and class action waiver provisions in the modified Account Agreement. Indeed, defendant has provided no evidence that it provided plaintiff notice at any point before or after adding the mandatory arbitration and class action waiver provisions to the Account Agreement. Specifically, Ms. Keehan, on behalf of HVCU, testified she did not know whether HVCU mailed or e-mailed plaintiff a copy of the revised Account Agreement and was not aware of any evidence indicating plaintiff ever accessed the Account Agreement through HVCU's website. Moreover, plaintiff states she was not "aware that [HVCU] had updated its Account Agreement and added an arbitration provision to its account documents in 2014," (Doc. #22-5 ("Pl. Decl.") ¶ 7), and she has never searched for or viewed the Account Agreement on the HVCU website.[8]

---

[8]   Defendant argues that because the complaint states the "standard account agreement" is the applicable contract and binding on the parties, and because the 2019 Account Agreement is the operative contract, plaintiff has admitted that the current Account Agreement, including the arbitration provision, is binding on the parties. (Reply at ECF 4). Defendant is wrong. Nowhere does plaintiff allege her claims are brought pursuant to provisions in the current Account Agreement as opposed to the 2012 Account Agreement. Indeed, plaintiff stated she was only ever aware of the 2012 Account Agreement prior to this litigation. Nor does defendant argue plaintiff's claims are based on provisions added after plaintiff opened her account in 2012. Thus,

Therefore, the Court must determine whether plaintiff was placed on inquiry notice of the arbitration requirements.

C. <u>Inquiry Notice</u>

Defendant has also failed to establish that plaintiff was on inquiry notice of the mandatory arbitration and class action waiver provisions in the modified Account Agreement.

1. <u>Online Banking Registration Process</u>

First, the Court finds defendant has failed to demonstrate plaintiff's registration for online banking put her on inquiry notice of the mandatory arbitration or class action waiver provisions contained in the revised Account Agreement. As discussed above, to determine whether the terms of a web-based contract were presented in such a way as to put an offeree on inquiry notice of such terms, the Court looks to the design and content of the relevant interface. <u>Meyer v. Uber Techs., Inc.</u>, 868 F.3d at 75. When, as here, the relevant provisions are provided in a hyperlink, the relevant inquiry is whether the hyperlink and language directing the user to that hyperlink are clear and conspicuous. <u>See</u> <u>Starke v. SquareTrade, Inc.</u>, 913 F.3d at 292.

Two recent Second Circuit cases provide guidance here. First, in <u>Nicosia v. Amazon.com, Inc.</u>, the court considered whether Amazon's webpage (where a customer submits his or her final purchase order) provided constructive notice of an arbitration clause included in Amazon's "Conditions of Use." 834 F.3d at 233–38. In finding that reasonable minds could disagree whether the "Conditions of Use" hyperlink was conspicuously displayed on the page, the court analyzed Amazon's interface, considering the following factors: (i) the font, size, and typographical emphasis of the language directing the customer to the "Conditions of Use" hyperlink; (ii) whether the relevant language and hyperlink was obscured by other links in

---

the Court cannot conclude, as defendant argues, that the pleadings constitute "judicial admissions" that the arbitration provision is binding on the parties.

11

various colors, fonts, and locations on the webpage; (iii) whether buttons and promotional advertisements drew attention away from the relevant language and hyperlink; and (iv) whether the presence of other information on the page, including the customer's personal address and billing and shipping information drew attention away from the relevant language and hyperlink. Id. at 237.

Second, in Meyer v. Uber Technologies, Inc., the court considered whether Uber's smartphone interface placed a user signing up for an account on inquiry notice of an arbitration provision contained in Uber's "Terms of Service," which were hyperlinked to the registration screen. 868 F.3d at 66. The court concluded Uber's registration screen did put the user on inquiry notice because the "Terms of Service" hyperlink and instructions directing the user thereto were "clear and reasonably conspicuous." Id. at 77–79. The court considered various factors regarding the design of the screen and language used, including: (i) the screen was uncluttered; (ii) the hyperlink to the "Terms of Service" was "spatially coupled" with the registration button; (iii) the entire screen was visible at once and did not require scrolling to find the "Terms of Service" hyperlink; (iv) the provision of the "Terms of Service" hyperlink was "temporally coupled" with the registration button; and (v) the language stating "[b]y creating an Uber account, you agree" clearly directed users to read the "Terms of Service" and signaled that their registration would bind them to the contractual terms of the "Terms of Service." Id.[9]

Here, defendant has not demonstrated that the design and content of the registration interface provided plaintiff reasonable notice of the mandatory arbitration provision added to the revised Account Agreement. Indeed, defendant provides no visual aid or description of any

---

[9] Although Nicosia v. Amazon.com, Inc., applied Washington law and Meyer v. Uber Technologies, Inc., applied California law, both Washington and California law are substantially similar to New York law with respect to contract formation. See Starke v. SquareTrade, Inc., 913 F.3d at 290 n.7 & n.8.

layout or design of the webpages that a user sees when registering for online banking services. Defendant also does not explain how the relevant provisions directing users to the terms of the Account Agreement are presented to users. Specifically, defendant does not state if a user is required to scroll through multiple screens to reach the language directing users to the Account Agreement, and if so, how many screens they are required to scroll through. Nor does defendant explain whether the hyperlink to the Account Agreement or language directing the user thereto are a different color, font, bolded, or underlined. Accordingly, the Court is unable to assess whether the relevant language and hyperlink are clear and conspicuous or obscured by advertisements, colors, links, or other information.

Instead, defendant excerpts two provisions from the Internet Banking Agreement and argues it "presented the contract terms in a clear and conspicuous way." (Reply at ECF 7). Specifically, defendant points to language in the Internet Banking Agreement stating that (i) by agreeing to the Internet Banking Agreement the user also agrees to be bound by the terms and conditions of the Account Agreement, as amended; and (ii) by continuing to use HVCU's website the user acknowledges he or she has received these agreements and agrees to be bound by them. But even assuming arguendo this language is clear and unambiguous, defendant has failed to demonstrate that the Internet Banking Agreement itself, the language regarding the Account Agreement, or the hyperlink to the revised Account Agreement were reasonably conspicuous. See Starke v. SquareTrade, Inc., 913 F.3d at 292. To the contrary, based on defendant's submissions, the hyperlink and language regarding the Account Agreement appear to be buried in the Internet Banking Agreement. Therefore, a reasonably prudent user would not understand that by clicking "I agree" to the terms of the Internet Banking Agreement, he or she

was agreeing to arbitrate or waive any ability to maintain a class action pursuant to provisions added to the Account Agreement.

Accordingly, defendant has failed to establish that plaintiff was put on inquiry notice of the mandatory arbitration or class action waiver provisions based on her registration for online banking services.

### 2.     HVCU Website

Plaintiff was also not put on inquiry notice of the modified Account Agreement based on defendant's publication of the revised Account Agreement to the HVCU website. Absent a provision in the original agreement that expressly provides for modification of its terms by publication, notice is insufficient when the "only notice of the changed terms consisted of posting the revised contract on the provider's website." Douglas v. U.S. Dist. Court for Cent. Dist. of California, 495 F.3d 1062, 1069 (9th Cir. 2007), see also Sacchi v. Verizon Online LLC, 2015 WL 765940, at *5 (S.D.N.Y. Feb. 23, 2015).

Here, defendant points to no such provision in the original Account Agreement that would allow the Court to conclude that posting the modified Account Agreement to the HVCU website put plaintiff on inquiry notice.

Defendant's argument to the contrary falls short. Specifically, defendant argues "the screenshots of the HVCU website . . . demonstrate[] that Plaintiff could have easily found and read the contract terms." (Reply at ECF 7). The Court disagrees. As Ms. Keehan testified, the Account Agreement was not posted on or linked to the homepage and there were no banners notifying users either that the Account Agreement was posted on the website or that it had been modified. Absent specific knowledge of the Account Agreement's location on the HVCU website, a reasonably prudent user could not easily have found and read the contract terms.

Thus, the screenshots do not demonstrate a user would have been on inquiry notice of the mandatory arbitration or class action wavier provisions. Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1177 (9th Cir. 2014) ("Whether a user has inquiry notice of a browsewrap agreement, in turn, depends on the design and content of the website and the agreement's webpage.") (applying New York law).

Accordingly, defendant has failed to establish that plaintiff was put on inquiry notice of the mandatory arbitration or class action waiver provisions based on defendant's publication of the revised Account Agreement to the HVCU website.

D.     Continued Use

Finally, absent any notice of the mandatory arbitration and class action waiver provisions added to the Account Agreement, plaintiff's continued use of her debit card and checking account is insufficient to establish plaintiff's assent to the terms of the modified agreement. As discussed above, continued use of an account or service can constitute acceptance of revised terms of use, including arbitration agreements. See Valle v. ATM, Nat., LLC, 2015 WL 413449, at *3. However, even in such cases, continued use of an account only manifests assent when the user has received notice of the revised terms. Id.; see also Schnabel v. Trilegiant Corp., 697 F.3d at 120.

Defendant argues "a 'reasonable person' would understand that regular use of a debit card or checking account over a period of six years would constitute assent to the terms and conditions of the applicable account agreement." (Reply at ECF 7). This argument is not persuasive. When, as here, an offeree has no notice (actual or inquiry) of additional contract terms, a reasonably prudent person would not understand that his or her regular use of a debit card or checking account would constitute assent.

Defendant's emphasis on the undisputed fact that plaintiff had six years to read the revised account agreement is likewise unpersuasive. Defendant points to no case law suggesting that the age of the mandatory arbitration and class action waiver provisions is alone sufficient to provide notice of their existence.

## CONCLUSION

The motion to compel arbitration is DENIED.

By April 5, 2021, HVCU shall file an answer.

By separate Order, the Court will schedule an initial conference.

The Clerk is instructed to terminate the motion. (Doc. #14).

Dated: March 22, 2021
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge